## FLANAGAN v. THE STATE.

1. No person indicted for crime can, under sections 951 and 953 of the Penal Code, as matter of right demand more than one trial upon a special plea of insanity at the time of trial. If, after such a plea has been found against the person, the trial in chief has been postponed, it would be a matter within the sound discretion of the judge whether or not another preliminary investigation upon the question of insanity at the trial should be had, and, if so, to what extent and in what manner the same should be conducted.

2. An exception to the general and well-settled rule, that one is criminally responsible who had sufficient reason to distinguish between right and wrong as to a particular act committed by him, exists in a case where it appears that, though the accused had such knowledge, his will, in consequence of some delusion brought about by mental disease, was overmastered so that there was no criminal intent as to the act in question, and when it also appears that this identical act was connected with the peculiar delusion under which the accused was laboring.

3. Under the evidence introduced in the trial of the present case, it was erroneous not to give in charge to the jury the written request embodying the principle above announced, the same not being covered in the court's general charge to the jury.

4. Where the defense relied upon in a trial for murder was irresponsibility arising from insanity at the time of the homicide, any evidence tending to show the real mental condition of the accused at that time is relevant, and his acts both before and after the homicide may be proved as tending to throw light upon the question thus put in issue. Accordingly, it was not erroneous to allow the State to introduce in evidence an affidavit

sworn to and subscribed by the accused himself, at a previous term, for the purpose of obtaining a continuance, the probative value and effect of such evidence being a matter solely for the determination of the jury.

5. Save as stated in the third headnote, the record discloses no sufficient cause for ordering a new trial in this case; the charge of the court, with the exception above referred to, fairly presented to the jury the question in issue; and the exceptions to it relating to other matters are not meritorious. There was no material error in admitting or rejecting evidence. The foregoing covers all questions requiring special mention, which arose at the last trial and are likely to arise at the next.

Argued January 17, 18, — Decided March 22, 1898.

Indictment for murder. Before Judge Candler. DeKalb superior court. Special term, July, 1897.

*Glenn & Rountree*, for plaintiff in error.

*J. M. Terrell*, attorney-general, *W. T. Kimsey*, solicitor-general, *W. W. Braswell* and *W. L. Wright*, contra.

SIMMONS, C. J. Flanagan was indicted for the offense of murder. Upon his arraignment on the indictment, he filed a special plea of insanity, alleging that he was then insane. Under the provisions of the Penal Code, §§ 951 and 953, a jury was selected to try the issue raised by this plea. After hearing the evidence, the argument of counsel, and the charge of the court, they returned a verdict finding that Flanagan was sane at that time. The case was then called for trial upon the merits, and the accused moved for a continuance, which was granted. More than two months thereafter, the case was again called for trial. Through his counsel the accused again filed a special plea of insanity, alleging that he was then insane and could not, under the above sections of the code, be forced to trial upon the merits until this second special plea was tried and determined. The State's counsel filed what they called a "special answer" to this second plea, wherein they set up the former trial upon a similar plea and averred that the question of insanity at the time of trial was res adjudicata. Counsel for the accused demurred to this answer; the demurrer was overruled by the court, and the accused excepted. The trial then proceeded upon the merits. Flanagan was convicted of murder, and his motion for a new trial was overruled. The

judgment overruling this motion was excepted to and brought here for review.

1. One of the grounds of the motion for new trial alleged error in the trial judge in overruling the demurrer to the special answer of the State to the plea of "present insanity," above alluded to. The sections of the code providing for this plea, and cited above, are as follows: "Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the asylum, there to remain until discharged in the manner prescribed by law." "No lunatic, or person afflicted with insanity, shall be tried, or put upon his trial, for any offense, during the time he is afflicted with such lunacy or insanity, which shall be tried in the manner hereinbefore pointed out where the plea of insanity at the time of the trial is filed, and, on being found true, the prisoner shall be disposed of in like manner." Counsel for the accused insisted that, under these sections, Flanagan could file this plea and, as matter of right, demand that it be tried by a special jury although it had once been so tried and determined against him. It was argued here, in support of this contention, that a person accused of crime had a right, under these sections, to file the plea of "present insanity" every time he was about to be tried, and that the trial judge had no discretion but was compelled to impanel a jury to try this issue, regardless of the fact that he had tried it upon a former occasion. Were this true, it would be almost impossible to force the accused to a trial upon the merits of the case. As soon as one trial of such a special plea was ended by an adverse finding and the case was again called for trial on the merits, the accused could again plead present insanity and force the court to go over another trial of that issue with possibly the same witnesses and the same evidence. If in such second trial the verdict should be against the plea, the accused could again file the same plea and demand that it be again tried. We think that the legislature did not contemplate such a construction of the act embodied in these sections of the code. The intention of the legislature,

.as we gather it from these sections and from the original act, was doubtless to give the accused the benefit of a jury trial, in order to ascertain whether he had sufficient mental capacity to understand the nature of the proceedings against him, to realize his peril and to assist his counsel in his defense, and that if the jury determined that he had such mental capacity, the trial would proceed upon its merits. It was simply the separate trial of one issue of the case, and this one trial was all, in our opinion, that the act was intended to give as matter of right. When this is had, the statutory right of the accused under these sections is exhausted.

It is, however, possible, and in some cases probable, that a person sane at the time of the trial of the special issue may, where his case is continued for any length of time, become insane to such an extent as to lack mental capacity to understand the nature of the proceedings against him, realize his peril, assist his counsel, etc. In such a case the accused would not be forced to trial upon the merits simply because a jury had, at a previous term of court, declared him then sane. His statutory rights under the code sections above cited would have been exhausted, but resort could still be had to his common-law remedies. Under the common law, when a suggestion of insanity was made upon arraignment, the judge always investigated the case and determined for himself whether the accused had sufficient mental capacity to go to trial. We think, therefore, that even after a jury had passed upon the plea of insanity at the time of trial and had determined it against the accused, where it is suggested to the judge that since the time of such finding the mind of the accused has materially changed and that he is now in such a mental condition as that he should not be put upon trial, the judge should make the proper investigation to ascertain the truth of the suggestion. He may do this in any right and proper manner, — by impaneling another jury if he deem it best to do so, by considering the affidavits of experts, by a personal examination and inspection, or otherwise. In 1 Bishop's New Criminal Law, in the footnote to section 376, an account is given of the trial of Freeman who was tried and convicted of murder. It appears from this

account that Freeman, upon arraignment, had filed a plea similar to the special plea in the present case, and that it was found against him by the jury.   Afterwards he was tried upon the merits of the case, and convicted.   The Supreme Court granted a new trial.   Mr. Bishop says:  "Thereupon the judge of the higher court, who was to preside at the new trial, visited the prisoner in jail, and in consequence of what there appeared of his mental condition refused to proceed with the trial."   The man, he states, subsequently died in prison, indubitably insane.   Under the code sections above set out, we think that the accused has no statutory right to more than one jury trial upon the issue of insanity at the time of the trial, but, under his common-law rights, he can at all trials suggest to the trial judge his incapacity, by reason of mental weakness, to go to trial, and appeal to the discretion of the judge just as may be done by a party to a civil action or by a person accused of crime, when he is by physical weakness or sickness incapacitated for trial.   If a person accused of crime is too ill to undergo trial at the time it is called, he may appeal to the court for a postponement or continuance.   The court in such a case can investigate the illness for himself by an inspection of the accused, or, as is frequently done, by taking the opinions of experts upon the subject, and may grant or refuse the request in his discretion.

2, 3. On the trial upon the merits, counsel for Flanagan claimed that, although he committed the homicide, he was not guilty of any crime, because, by reason of a delusion under which he was laboring at the time of the killing, he was unable to form in his mind an intent to commit a crime.   They claimed that he was laboring under a form of mental disease known as paranoia or delusional insanity, that a person afflicted with such mental disease has a delusion or delusions which dominate but do not destroy the mental capacity, and that although the accused was sane as to other subjects, on that of the delusion and its direct consequences he was an insane man.   They further contended that the delusion of this case was one known as the delusion of persecution, and that Flanagan, believing that he was being unjustly persecuted by persons and that he was

endeavoring to escape from his persecutors, and finding his escape cut off and that there was nothing else to do but to slay his persecutors, proceeded to do so. They claimed that if all of these contentions were true and the accused acted under these delusions, he was not responsible for the killing. There was evidence sufficient to sustain the theory of delusion, and upon this evidence counsel for the accused requested the court, in writing, to give the following charge to the jury: "Was the defendant at the time of the commission of the alleged crime, as matter of fact, afflicted with a disease of the mind so as to be insane? If such be the case, did he know right from wrong as applied to the particular act in question? If he did not have such knowledge, he is not legally responsible. If he did have such knowledge, he may nevertheless not be legally responsible, if the two following conditions concurred: (1) If, by reason of the duress of such mental disease, he had so far lost the power to choose between right and wrong and to avoid doing the act in question, as that free agency was at the time destroyed. (2) And if at the same time the alleged crime was so connected with such mental disease in the relation of cause and effect as to have been the produce of it solely." The judge refused to give this request in charge to the jury, but charged generally the doctrine that one is criminally responsible who has sufficient reason to distinguish between right and wrong as to the particular act committed by him; and, on the subject of delusions, charged as follows: "If, in consequence of a delusion connected with the act in question, the will is overmastered and the reason is dethroned as to that particular act, there is no criminal intent as to that act, and hence no criminal responsibility for that act. But it is not every delusion of a man that would render one irresponsible; it must be such a delusion as is connected with the act in question, and must be such a delusion as overmasters the will and dethrones reason as to that particular act."

We think the court erred in refusing to give in charge the written request or its substance, and that he also erred in the charge he did give upon the subject. Courts, both in this country and in England, have for a long time differed as to

the soundness of the doctrine of the request above set out, but this court has been committed to it for over fifty years.   In the case of *Roberts* v. *State*, 3 *Ga.* 310, Nisbet, J., discusses the subject of insanity and delusions, in an exhaustive opinion.   That case announced the following proposition as the law upon this question: "If a man has reason sufficient to distinguish between right and wrong in relation to a particular act about to be committed, he is criminally responsible.   An exception to this rule, however, is, where a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet in consequence of *some delusion*, the will is overmastered and there is no criminal intent.   Provided that the act itself is *connected with* the peculiar delusion under which the prisoner is labouring."   This case has never since been overruled, doubted or questioned by this court, but has been recognized and approved in the only two cases where the subject of delusions has been treated since that time.   In the case of *Danforth* v. *State*, 75 *Ga.* 614, it appears that the trial judge followed it and that his charge was approved by this court.   In the case of *Carr* v. *State*, 96 *Ga.* 284, the doctrine of the *Roberts* case was again recognized by the court.   There are numerous other cases in our reports which lay down the rule as announced in the first lines of the above quotation from the *Roberts* case, but in none of them, so far as we now recollect, was the question made as to delusions.   The right and wrong theory being the general test, it was not in those cases necessary to deal with the exception.

As before remarked, the doctrine of the *Roberts* case was announced directly after this court was organized and has never since been questioned or doubted by this court.   It is cited with approval in the leading works on criminal law and medical jurisprudence written in this country, and by many decisions of the different State courts.   Its doctrine is the one which has been adopted generally by the modern text-writers on criminal law, and, we believe, by a majority of the State courts.   Not only is this principle approved by all of these authorities, but we think it commends itself as being sound and reasonable.   If a man has delusions pro-

duced by a disease of the mind, and by reason of those delusions his will is completely overmastered so that he has no power, even though he can·distinguish between right and wrong, to adhere to the one or to. avoid the other, he has not the capacity to form a criminal intent.   A person afflicted with such a disease of the mind may know that a particular act is wrong and believe that he will be punish'ed for it, and yet, if he is laboring under a delusion and his will is overpowered by an irresistible impulse which results from his peculiar delusion, he can not be held criminally responsible for the commission of the act.   Will is as necessary an element of intent as are reason and judgment.  On this subject see 1 Bishop's New Crim. Law, § 374 et seq. ; 1 Wharton's Crim. Law, § 32 et seq.; Taylor's Med. Juris. (11th Am. ed.), 680, 686, 728, 729 ; Parsons v. State, 81 Ala. 577; State v. Johnson, 40 Conn. 136; Macfarland's Trial, 8 Abb. Pr. Rep. n. s. 57 ; Com. v. Rogers, 7 Metc. (Mass.) 500 ; Smith v. Com., 1 Duv. (Ky.) 224 ; Graham v. Com., 16 B. Mon. (Ky.) 591 et seq.; Com. v. Haskel, 2 Brews. 490 ; Dunn v. People, 109 Ill. 635; Sawyer v. State, 35 Ind. 86 ; State v. Felter, 25 Iowa, 67; Fouts v. State, 4 G. Greene, 500 ; State v. Pike, 49 N. H. 441; State v. Jones, 50 N. H. 369; Com. v. Mosler, 4 Pa. St. 264; State v. Windsor, 5 Harr. (Del.) 512; People v. Klein, 1 Edm. Sel. Cas. 35; Coylee v. Com., 100 Pa. St. 573, s. c. 45 Am. Rep. 397.

The charge of the court on this subject, as given, eliminated entirely the principle above discussed.   It required the jury to find not only that the will was overpowered but reason dethroned, before they could acquit the accused on the ground· of delusional insanity.   According to the *Roberts* case and the authorities cited above, a man may know and may reason that the act about to be committed is wrong, and yet, if the will be overmastered by reason of mental disease, and he has so far lost the power to choose between the right and the wrong, and to avoid doing the act in question, as that free agency is at the time destroyed, and the act done is so connected with the delusion produced by such mental disease in the relation of cause and effect as to have been the result of it solely, he is not criminally responsible.   The charge of the trial judge is directly

in conflict with the *Roberts* case and the authorities here cited, and a different test is required in cases of this kind. The exception to the right and wrong test, announced in the *Roberts* case by Judge Nisbet, was not given in charge to the jury, and they therefore did not pass upon the question made in that exception — that if a man has reason sufficient to distinguish between right and wrong as to a particular act about to be committed, yet, in consequence of some delusion produced by a disease of the mind, the will is overmastered, there is no criminal intent if the act itself be connected with the peculiar delusion under which the mind is laboring. The trial judge should have given this exception in charge and required the jury to find, as matter of fact under the evidence, whether the will of the accused was so overpowered by reason of a delusion produced by mental disease that he could not resist, although he might have known that the act itself was wrong, and also to determine whether or not the act committed was connected with the delusion and produced solely by it. We think the court erred in refusing to give the written request to charge to the jury, and also that he erred in charging as he did on the subject of delusions. For these reasons only, we reverse the case and order a new trial. If the accused was, under the law, responsible for his acts, he is guilty of a horrible murder. If he was not so responsible, he is entitled to an acquittal. Whether he be guilty or innocent, he has not, in our opinion, had a fair and impartial trial under the constitution and laws of his State; and so believing, we are, under our oaths, compelled to grant him a new trial.

4. When, after the trial of the issue raised by the special plea of insanity, the case was called for trial upon its merits, the accused moved for a continuance upon the ground of the illness of his leading counsel. In a written affidavit made in support of this motion, he alleges the employment of his leading counsel, that he relied solely upon him, that he had never consulted with junior counsel, etc. The continuance was granted. At the trial upon the merits, at a succeeding term, counsel for the State offered the affidavit in evidence, and it was admitted over the objection of counsel for the accused. It

was not error to admit this affidavit in evidence. We think it is now well settled that, in testing the state of mind at a given period, evidence may be admitted as to the state of mind both before and after that time. 1 Bish. New Crim. Law, § 385. And to ascertain the state of mind as to a particular subject, we may look to evidence of its condition as to other subjects. Ibid. The probative force of the evidence is, of course, a question for the jury. The affidavit admitted may illustrate the state of mind of the accused at the time of the commission of the homicide, or it may not. Speaking for myself, knowing as I do how these affidavits for continuances are prepared by counsel, I should give such an affidavit little attention in a trial like this, were I on the jury. It was made five months after the time of the homicide, and does not relate directly to the subject on which the accused is claimed to be insane. Still, as it may have been of some value to the jury, it was admissible and the trial judge did not err in overruling the objections made to its introduction.

5. There are other questions made in the record; but with the exception of that referred to in the third headnote, there is no material error in any of those which we deem it necessary to consider. As to whether the court erred in not granting a change of venue is not passed upon, for the same conditions and circumstances may not exist at the next trial. Nor do we rule upon the refusal of the court to allow the recall of one of the medical experts to the stand, for the accused will have an opportunity, at the next trial, to elicit his opinion. It is claimed that the judge refused to allow the accused to complete his statement to the jury, and that one of the jurors was prejudiced against the accused; but these questions are not at all likely to arise at another trial, and we therefore do not rule upon them. The charge of the court, save as to the matter of delusional insanity, was full and fair, and the exceptions to it relating to matters other than as ruled in the third headnote are not meritorious. There was no material error in admitting or rejecting evidence.

*Judgment reversed. All the Justices concurring, except Lewis, J., disqualified.*