## 28760. ESTES v. THE STATE.

ARGUED APRIL 8, 1974 — DECIDED SEPTEMBER 6, 1974.

*C. C. Perkins,* for appellant.

*John T. Perrin, District Attorney, Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Richard L. Chambers, William F. Bartee, Jr., G. Stephen Parker, Assistant Attorneys General,* for appellee.

GRICE, Chief Justice.

Anthony Leon Estes was indicted for the offenses of rape, aggravated sodomy and aggravated assault and convicted in the Superior Court of Paulding County on the charges of rape and aggravated assault. He appeals his convictions and sentences of life imprisonment for the rape and ten years for the aggravated assault, enumerating thirteen errors.

■ The enumeration asserting that the evidence did not support the verdict cannot be sustained.

It showed that the victim on September 23, 1972, in her apartment on Paulding Lane in Dallas, Georgia, was awakened sometime after 2:30 a.m. by a touch on her arm as she lay sleeping in her bed; that thinking that it was one of her children she started to sit up when she saw a man, whom she identified as the appellant, with a bottle in his hand; that she screamed, and he began hitting her in the head and face with the bottle until it broke; that when the bottle broke he began beating her with his fist; and that she then lost consciousness.

The victim further testified that when she regained consciousness the appellant was on top of her and having sexual intercourse with her; that she began to cry and he told her to "cool it, baby, or I'll kill you right now"; that he told her to perform an oral sex act upon him but she could not because of the injuries to her mouth and jaw; and that he then got back on top of her and had sexual relations with her again, telling her that if she told anyone, "He had ten brothers and I'd had it."

She also swore that there was sufficient light from a nearby street light to see the appellant clearly; that he told her his name was Tony Smith; that she did not see anyone else during the entire episode; and that she had not seen him since the assault.

She identified the appellant in the courtroom as her assailant.

Other witnesses, including her ten-year-old daughter and several neighbors, testified as to the victim's outcry and bloody condition immediately following the incident. One neighbor stated that when he went to the victim's apartment to stay with her children while she went to make a telephone call, he saw a black male walking out of her apartment but that the person he saw was not the appellant. Medical witnesses testified as to her condition upon admission to the hospital and examination that she had multiple lacerations and bruises and there was evidence of recent vaginal bleeding; and that she stated that "a colored man raped me and beat me up."

Ruffin Hightower, a friend of appellant's, testified that there was a going away party for appellant on the night of September 22, 1972, in honor of his entering the army; and that following the party he drove the appellant to Dallas, Georgia, and let him out at about 2:00 a.m. near a lumberyard on the Villa Rica Highway.

Testimony of the law officers who investigated the attack revealed the following: that those present at the going away party were being investigated; that Ruffin Hightower stated that the appellant had gotten out of his car on the night the offenses occurred in the vicinity of the crime; that a deputy sheriff of Paulding County and the Sheriff of Douglas County and two other men went to Fort Jackson, South Carolina, to talk to appellant, who had not been interviewed prior to this time and was not a suspect; that appellant was located by the Criminal Investigation Division (C. I. D.) there and brought to a C. I. D. building; that he was told he was not under arrest, did not have to talk and was advised of the subject matter of the investigation.

Sheriff Lee stated that appellant said he "had been expecting" the officers; and that when he told him that Ricky Hightower, Ruffin Hightower's brother, had been arrested as a suspect, the appellant admitted his participation in the attack. In an oral statement to Sheriff Lee appellant said that he met Robert Favors after getting out of Ruffin Hightower's car near the lumber yard; that he and Favors went to the victim's apartment, got in through the back door and went

upstairs to her bedroom; that Favors beat her with a Coke bottle; that he (appellant) raped her and then left the apartment to call an ambulance, but returned briefly.

After making this statement, he indicated a desire to send a message to his parents. Sheriff Lee provided a tape recorder for him and left him alone in the room. In this message, which was transcribed and read and also played at the trial, appellant stated that he "did it"; that "I told them a few lies at first and then I told them the truth," but he was not scared any more; that Ricky Hightower was in jail for something he had done and he had to pay for it because an innocent person should not die for a guilty person; that what Ruffin Hightower said was the truth; and that "I know I've done lost my reputation and all that but sometimes it's just got to be like that . . ."

Two days later the officers went to the Richland County Jail in Columbia, South Carolina, where appellant was being held, with a warrant for his arrest. When he was shown the warrant and advised of his constitutional rights he agreed to make a handwritten statement, which was read and introduced into evidence at the trial. He stated therein that he had been drinking and was walking down the road in the direction of the housing project when he saw Favors; that they walked around until they got to the victim's apartment; that Favors told him to get a bottle so he got a 16-ounce Coca-Cola bottle; that Favors told him to hit the lady with the bottle if she woke up and he said O. K., but Favors grabbed the bottle out of his hand when she began to scream and "hit her three or four times on the left side of the face"; that Favors pulled her clothes off but he (appellant) "started having sex with her first and I told her my name was Tony Smith"; that when he left to call a doctor Favors was still there; that he called an ambulance at a house down the street and the driver said to leave a light on the front porch; and that when he "went back to tell the people to leave the light on the front porch, it was a guy on the porch and a girl standing in the door"; and that he told them to leave a light on and left. He further stated that he entered the army on September 25.

In our view, even though some of the evidence was conflicting, it amply supports the verdicts of guilty of rape and aggravated assault.

■ Enumerated error 1 contends that the court erred in overruling appellant's plea in abatement challenging the composition of the grand jury that indicted him because it contained no persons aged 18 through 20 years, and in refusing to quash the indictment.

At the pretrial hearing on this motion it was stipulated that there were no persons in this age category in the group from which appellant's grand jury was selected. The appellant argued at that hearing that because he was eighteen years old at the time he was indicted the failure to have eighteen through twenty-year-olds on his grand jury deprived him of his constitutional rights.

Upon appeal it is urged that the language of Code Ann. § 74-104.1 (Ga. L. 1972, pp. 193, 199; 1973, p. 590), which states in material part that "It is the intention of the age of majority law to reduce the age of legal majority in this state from 21 years of age to 18 years of age for all purposes so that all persons who have reached the age of 18 shall have all the rights, privileges, powers, duties, responsibilities and liabilities heretofore applicable to persons who were 21 years of age or over," entitles the appellant to have 18-year-olds serve on grand juries; and the fact that there were no 18-year-olds on the Paulding County Grand Jury that indicted him deprived him of the right of trial by a representative cross section of the community.

Our Constitution (Art. VI, Sec. XVI, Par. II; Code Ann. § 2-5102) authorizes the General Assembly to "provide by law for the selection of the most experienced, intelligent and upright men to serve as grand jurors . . ." Code § 59-106 (as amended, Ga. L. 1968, p. 533; 1973, pp. 484, 485) specifically requires that such list be selected from "a fairly representative cross-section of the intelligent and upright citizens of the county from the official registered voters' list of the county as most recently revised by the county board of registrars or other county election officials."

The constitutionality of this method of selection has previously been upheld by this court against a charge that it resulted in the exclusion of young adults ranging in age from 18 to 30 years. *White v. State,* 230 Ga. 327 (1) (196 SE2d 849) (one Justice dissenting).

Moreover, the appellant here did not show in his plea in abatement that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned. This must be done before such a plea may be entertained after the indictment has been returned. *Wooten v. State,* 224 Ga. 106 (1) (160 SE2d 403). "The challenge to the array is the proper method of raising this question before the indictment is returned unless it is shown that the defendant had no knowledge of the illegality prior to the indictment." *Simmons v. State,* 226 Ga. 110, 111 (172 SE2d 680) and cits. See also, *McHan v. State,* 232 Ga. 470 (2, 3). See also, Hamling v. United States, ——U. S.—— (94 SC 2887, 41 LE2d 590).

Accordingly, the trial court properly overruled appellant's plea in abatement challenging the composition of the grand jury and his motion to quash the indictment.

■ Enumerated error 13, that appellant was deprived of a fair and impartial trial because an all-white jury was impaneled, is likewise not valid. Such claim must be asserted by a written challenge to the array as provided by Code § 59-803, and the defendant has the burden of showing jury discrimination. *Pass v. Caldwell,* 231 Ga. 192 (1) (200 SE2d 720); *Williams v. State,* 232 Ga. 203 (206 SE2d 37).

This was not done here.

■ Enumerations of error 2, 3, 6, 7, 8, 9, 10 and 12 relate to the admissibility of incriminating statements and a handwritten confession made by appellant on November 8 and November 10, 1972.

The appellant contends that the trial court erred in overruling his motions to suppress this evidence because the statements were made in the course of in-custody interrogations and he was not advised of his constitutional rights.

These contentions cannot be sustained.

(a) The record here reveals that when the officers first questioned appellant at Fort Jackson, South Carolina, on November 8, they were investigating another person who had been charged with the offenses for which he was later tried. He was not then a suspect and was not in custody when interviewed in a Criminal Investigation Department office on the Army base. When he asked to make a tape recording of a message to his parents the officers provided the tape and the recorder and left the room. They then delivered the message to his parents. Not only was he not taken into custody at that time, the Georgia officers were not authorized to take him into custody since they were in South Carolina.

Clearly the statements made at this interview were voluntary. Moreover, as stated by this court in *Kemp v. State,* 227 Ga. 251, 252 (179 SE2d 920), "the mandates of the Miranda case apply to in-custody interrogation, not to pre-custodial questioning, as here."

It is also significant that after the officers returned to Georgia from Fort Jackson they took out a warrant for the appellant's arrest, which was communicated to authorities in Richland County, South Carolina. Two days later the Georgia officers returned to South Carolina and interviewed him in the Richland County Jail, at which time he was in custody and was advised of his constitutional rights under the Miranda decision. At that time he wrote out and signed a statement confessing to the charges for which he was tried, which not only reiterated but enlarged upon his previously volunteered statements. This written confession was admitted into evidence as state's Exhibit 21.

Thus, having determined at the pre-trial hearing that none of the statements were subject to suppression under any legal authority and were admissible as evidence upon the main trial, the trial court did not err in admitting testimony as to the statements made at Fort Jackson, or for the tape recording to be played.

(b) Appellant also contends that a proper foundation had not been laid for allowing a transcript of the tape recording to be read at the trial.

This contention is based upon the holding of the Court of Appeals in *Steve M. Solomon, Jr., Inc. v. Edgar,*

92 Ga. App. 207 (3) (88 SE2d 167). The basic steps for laying a proper foundation as set forth in that decision, however, have been met here. The testimony of the officers present showed that the tape recorder was in condition to take testimony; that the operator of it was competent; that it was authentic and correct; that it had not been changed or altered; that it had been in their custody; and who the speakers were. We have previously ruled that the statement was voluntarily made.

Moreover, the material contained in the tape recording was cumulative of the other statements admitted.

(c) The handwritten confession made at the Richland County jail was likewise properly admitted.

As previously pointed out, appellant was shown a warrant for his arrest and advised of his constitutional rights and he then told the officer that he was willing to make a handwritten statement. He testified at the Jackson v. Denno hearing that "I wrote what I wanted to" in the statement. Thus all constitutional safeguards for admitting it to the jury were fully complied with. *Walker v. State*, 226 Ga. 292 (3) (174 SE2d 440).

We find no error in regard to these enumerations.

■ The appellant complains that the court erred in allowing a nurse on duty at the emergency room of the hospital where the victim was admitted to testify as to certain statements made to her by the victim that night.

The nurse testified that during the course of the victim's examination when she asked her about the source of her injuries, the victim told her that she had been awakened by a black male who beat her with a Coke bottle and raped her.

Several of the victim's neighbors testified that she had told them substantially the same thing immediately following the attack. Such testimony was admissible as a part of the res gestae. Therefore, since the evidence overwhelmingly supported the jury's verdict, the admission of the nurse's testimony, if error, was harmless.

■ Appellant's enumeration that the transcript of the pre-trial hearing was improperly admitted at the jury trial was not supported by argument or citation of

authority in his brief. Accordingly, it must be deemed to be abandoned. *Spurlin v. State,* 228 Ga. 2 (5) (183 SE2d 765).

We find no error for any reason assigned.

*Judgment affirmed. All the Justices concur.*