## 30076. GIBBS v. THE STATE.

PER CURIAM.

Janie H. Gibbs was indicted on January 22, 1968, in Crisp County, for the murder of Roger L. Gibbs. A special plea of insanity was filed, and on February 7, 1968, a jury found in favor of the plea and she was committed to the state mental hospital. She was returned to Crisp County in 1974. On August 26, 1974, her attorney filed a number of pre-trial motions and pleas in bar. On October 21, 1974, two additional indictments were returned against her charging her with the murders of Charles C. Gibbs, Marvin Gibbs, Melvin Gibbs, and Ronnie E. Gibbs. The trial judge denied the motions and pleas, as amended, and the appeal is from this order, on certificate of immediate review.

1. The first enumerated error contends that the court erred in denying the appellant's challenge, filed August 26, 1974, to the array of grand jurors who returned the indictment against her in 1968. This challenge alleged that the appellant was denied her constitutional rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution because of the systematic exclusion of black persons from the grand jury box from which the names were drawn for the grand jury that indicted her.

The appellant is a white person. The Supreme Court of the United States in Peters v. Kiff, 407 U. S. 493 (92 SC 2163) (1972), held that a white person has standing to attack the systematic exclusion of black persons from grand and petit jury service. This court in *Ferguson v. Caldwell,* 233 Ga. 887 (213 SE2d 855), held that it would not serve the interest of justice to apply the Peters v. Kiff

decision restrospectively in cases where a white person is objecting to the exclusion of nonwhite persons from the grand and petit juries, and no actual prejudice is shown, citing Watson v. United States, 484 F2d 34 (5th Cir. 1973) (cert. den. 416 U. S. 940).

The appellant made no showing of actual prejudice, and made no showing that she had no actual or constructive knowledge of the alleged illegal composition of the grand jury prior to the return of the indictment. She was represented by counsel at that time. The trial judge therefore properly overruled her plea in abatement. *McHan v. State,* 232 Ga. 470 (2) (207 SE2d 457); *Estes v. State,* 232 Ga. 703, 707 (208 SE2d 806).

We do not mean to infer from this ruling that the evidence was sufficient to sustain the contention that there was a systematic exclusion of black persons from the grand jury returning the indictment against the appellant in 1968.

2. Enumerated error 2 complains that the trial court erred in denying the appellant's special plea in bar asserting that the court's delay in bringing her to trial violated her constitutional right to a speedy, fair, and impartial trial.

The appellant concedes that the right to a speedy trial has no application to delays resulting from a finding of incompetency, but contends that the evidence shows that she was available to the state for trial as early as September 24, 1971.

On that date a letter was sent to the Judge of the Superior Court of the Cordele Judicial Circuit, written in the name of the superintendent of Central State Hospital, by the chief physician, advising the judge that the appellant was presented to their psychiatric staff, that it was their opinion that she was able to cooperate with counsel in her defense, and that she was ready to be discharged and returned to Crisp County. It was recommended that she remain in the hospital until time for the court to convene, or for her case to be on the docket.

The appellant was represented by counsel at the time this letter was sent, and no demand was made for trial. On December 14, 1971, a letter was sent to Judge McMurray, of the Cordele Circuit, by the director of the South Georgia

Regional Unit of the Central State Hospital, stating that he had met with the district attorney and talked by phone with the attorney for the appellant, that he had told them that it was his professional opinion that the appellant was not in position to face trial on the murder charge pending against her, and that she was in need of continued psychiatric care and treatment in a mental hospital setting. This letter was also signed by the superintendent of Central State Hospital.

On May 30, 1974, another letter was written to Judge McMurray by the director of the South Georgia Unit of Central State Hospital, with the name of the superintendent typed at the left and below the signature of the director, advising that the appellant had been presented before the staff, and that it was their opinion that she was not psychotic and was able to face trial and to cooperate with her counsel in the preparation of her defense.

The trial judge was authorized to find that the delay in bringing the appellant to trial was the information received from the state hospital that she was incompetent to stand trial. Under the circumstances shown by the evidence it was not error to refuse to dismiss the indictments because of the delay in bringing her to trial.

3. Enumerated error 3 asserts that the court erred in denying the appellant's motion to exclude the appellant's incriminating statement made on December 25, 1967. It is contended that this statement should not be admitted at trial because it was given while she was in custody, without benefit of counsel, and mentally incompetent to waive her constitutional right to counsel and right to refuse to incriminate herself.

The district attorney argues that it is unnecessary to consider this enumerated error because a Jackson-Denno hearing will be required at the trial. A trial judge may hold a pre-trial Jackson-Denno hearing if he elects to do so, and such a hearing was held in the present case. See *Wanzer v. State,* 232 Ga. 523, 529 (207 SE2d 466); *Jarrell v. State,* 234 Ga. 410, 417 (216 SE2d 258).

The appellant was arrested on December 23, 1967. She was interrogated on that date, and the two succeeding days. Her statement was made on December 25, 1967,

when she was without representation of counsel.

Her statement acknowledged that she had been informed of her constitutional rights. It detailed the giving of poison by her to her husband, three sons, and a grandson, over a period of time from January, 1966, to October, 1967.

When a trial judge has made a determination as to the voluntariness of a confession after a suppression hearing, such determination must be accepted by the appellate courts unless his decision is clearly erroneous. *Johnson v. State,* 233 Ga. 58 (209 SE2d 629); Lego v. Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618).

The question of the voluntariness of the appellant's confession must be decided by a determination of her mental competency at the time it was given, on December 25, 1967.

A special jury found the appellant to be mentally incompetent to stand trial on February 7, 1968. The testimony of several physicians was that she had a severe psychotic condition, and that the illness had been developing over a period of from one to three years. However, they also testified that she was a woman of normal intelligence, that her sensorium was essentially clear and that she was oriented to time, place and person and situation. There was also testimony that she was running a nursery during this same period of time. Two GBI officers, one of whom arrested the appellant, testified that it was their opinion, based on their interviews with her while she was under arrest and prior to her confession, that at the time of her confession she understood her constitutional rights and was mentally competent to waive them.

Appellant relies on Blackburn v. Alabama, 361 U. S. 199 and Fikes v. Alabama, 352 U. S. 191. Both are distinguishable from the facts in this case. In Blackburn, the accused was insane plus there was an 8 to 9 hour sustained interrogation in a small room. In Fikes, the accused was mentally retarded or mentally ill plus five days of intermittent questioning in a secluded removed location.

In reviewing the totality of the evidence, we cannot say that the decision of the trial court was clearly

erroneous. For this reason the trial court did not err in denying the motion to suppress the written confession.

4. Enumerated error 4 complains that the court erred in denying the appellant's plea in bar alleging that it would be illegal for the state to try the appellant without further judicial consideration of her mental capacity to stand trial. Enumerated error 5 contends that the court erred in denying the appellant's motion for a sanity trial.

Code § 27-1502 provides: "Whenever the plea of insanity is filed, it shall be the duty of the court to cause the issue on that plea to be first tried by a special jury, and if found to be true, the court shall order the defendant to be delivered to the superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law."

On February 7, 1968, a special jury found in favor of the plaintiff's plea of insanity. When she was returned by the state mental hospital to Crisp County in 1974, she again filed a special plea of insanity, which was denied.

In *Flanagan v. State,* 103 Ga. 619 (1) (30 SE 550), a statement was made that no person indicted for crime as a matter of right can demand more than one trial on the special plea of insanity. In that case the special jury had returned an adverse verdict on the first special plea of insanity. The *Flanagan* case was followed in *Hardwick v. State,* 231 Ga. 181, 183 (200 SE2d 728) under similar facts. The rulings in these cases have no application to the facts in the present case.

Code Ann. § 88-506.7 (Ga. L. 1969, pp. 505, 530) provides that the hospital may release a patient under criminal charges to the custody of the proper peace officer when the patient is found by the superintendent no longer to meet the criteria of Code Ann. § 88-506.1 (Ga. L. 1969, pp. 505, 525), which is that the patient is "mentally ill and is (a) likely to injure himself or others if not hospitalized or (b) incapable of caring for his physical health and safety." A determination that a patient meets this criteria is not an adjudication that the patient "is mentally competent at the time of the trial of understanding the nature and object of the proceedings going on against him, and rightly comprehends his own condition in reference to

such proceedings, and is capable of rendering his attorneys such assistance as a proper defense to the indictment preferred against him demands." *Brown v. State,* 215 Ga. 784 (1) (113 SE2d 618).

The appellant, who was previously adjudicated incompetent to stand trial, is entitled to have the issue of her present competency determined prior to standing trial.

It was error for the trial judge to deny the appellant's motion for a sanity trial pursuant to Code Ann. § 27-1502.

*Judgment reversed. All the Justices concur, except Gunter, Jordan and Ingram, JJ., who concur specially.*

ARGUED JULY 7, 1975 — DECIDED SEPTEMBER 23, 1975 — REHEARING DENIED OCTOBER 21, 1975 AND NOVEMBER 4, 1975.

Martin, Kilpatrick & Davidson, Frank K. Martin, G. Mallon Faircloth, William L. Tucker, Charles H. Ford, Jr., for appellant.

Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr., Deputy Assistant Attorney General, D. E. Turk, District Attorney, for appellee.

JORDAN, Justice, concurring specially.

I cannot concur with the decision of a majority of the court in Division 3 that the motion to suppress the written confession of the appellant was properly denied.

It is my view that there was compelling evidence that the appellant was insane at the time she made her confession, and that it should have been suppressed.

The special jury trying the issue of her competency to stand trial, at a time shortly after her confession was given, found that she was insane. The medical testimony was uncontradicted that she had a severe psychotic condition of the schizophrenic type, and that this condition had existed for some time before their examination. The written statement itself indicates her confused mental state. She repeatedly stated that she did not know why she administered the poison, that she loved her husband, sons, and grandson. The fact that she appeared to be sane and intelligent to the officers

interviewing her did not make any real issue as to her mental competency to waive her constitutional rights, since such appearance would be consistent with her schizophrenic condition as described by the medical experts.

Mr. Chief Justice Warren, delivering the opinion of the United States Supreme Court in Blackburn v. Alabama, 361 U. S. 199, 207 (80 SC 274) (1960), stated: "Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion." See also Fikes v. Alabama, 352 U. S. 191 (77 SC 281).

While I agree with the statement in the majority opinion that a finding by a trial judge on the voluntariness of a confession will not be reversed unless clearly erroneous, it is my view that the evidence on the question of the mental competency of the appellant at the time of her confession demanded a finding, under the totality of the circumstances of this case, that she was mentally incompetent to make a voluntary confession.

Therefore, I would reverse the trial judge's denial of the motion to suppress the appellant's confession, as well as the denial of the motion for a sanity trial.

I am authorized to state that Justice Gunter and Justice Ingram join me in this special concurrence.