## 22821. BLEVINS v. THE STATE.

CANDLER, Justice. James Melvin Blevins was indicted on August 22, 1963, for the murder of Carolyn Newell. The indictment charges that he murdered her on April 14, 1963, in Walker County. He was convicted of that offense without a recommendation for mercy and was sentenced to be electrocuted. His motion for a new trial was overruled and he excepted to that judgment. There are also exceptions to antecedent rulings which will be dealt with in the opinion. *Held:*

1. *Code Ann.* § 59-212 declares that "All grand jurors in the courts of this State shall be disqualified to act or serve, in any case or matter, when such juror is related by consanguinity or affinity to any party interested in the result of the case or matter, within the sixth degree, as computed according to the civil law." On August 21, 1963, and before the indictment was returned against this defendant, he filed a petition which he denominated as being a challenge to the array of the grand jurors who had been empaneled to serve at the August 1963 term of the Walker Superior Court. We construe his petition as being a demand that the judge inquire into and determine if any of the grand jurors then serving were disqualified to investigate and act on the murder charge pending against him because of their kinship to contributors of a reward fund which had been raised immediately subsequent to

the death of Carolyn Newell and Orville Steele. It is alleged in his petition that several members of the grand jury were related within the sixth degree to some of the contributors to the reward fund and were for that reason disqualified to investigate and act on the murder charge pending against him. His petition was heard before the grand jury began its investigation of the charge against him. At such hearing he introduced as witnesses W. L. Abney, the Ordinary of Walker County, and George M. Cramer. Judge Abney testified that several people after the homicide of Carolyn Newell and Orville Steele contributed to a fund to be paid as a reward for information leading to the apprehension and conviction of the person or persons who killed them. The contributions had been delivered to him and were on deposit in the Bank of LaFayette to the joint account of himself, Sheriff Harmon of Walker County and Bascom Wilson. He had personal knowledge of only 17 persons who contributed to the fund and he named them and the amount each contributed. George M. Cramer testified he was in possession of about $100 which had been contributed by the employees of the Happy Valley Farms as a reward fund; that he and Mrs. Raymond Deberry each contributed to the fund; and that he was holding it "for the apprehension and conviction of the party that is convicted, for the person that leads to the conviction of the person that was guilty in this case, or for the family in case no such comes up." The judge had the grand jurors brought back to the courtroom and after swearing them inquired as to kinship between any member of the body and the 19 persons named as contributors to the reward fund by the witnesses Abney and Cramer. One member of the grand jury stated that he was a second cousin to one of the contributors and another stated that he was himself one of the contributors. The judge directed those two to leave the grand jury room while the charge against the accused was being heard and acted upon. Query: Were the members of this grand jury or any of them disqualified to act or serve on the pending murder charge against the accused if related within the prohibited degree to any of those who contributed to the reward fund or who were themselves contributors thereto? Or stated differently, was a contributor to this reward fund so interested in the result of the grand jury's investigation of the pending murder charge against the accused that his kin-

ship within the prohibited degree to a member of the grand jury would disqualify such grand juror from acting or serving in this case? If these contributors became volunteer prosecutors of the accused, our question should be answered in the affirmative; otherwise, in the negative. This court has several times held that a contributor to a fund which is to be paid for service rendered in apprehending and prosecuting a *particular* person for a specified penal offense is a volunteer prosecutor of that person. See *Lyens v. State,* 133 Ga. 587 (66 SE 792); *O'Berry v. State,* 153 Ga. 644 (2) (113 SE 2); *Harris v. State,* 188 Ga. 745 (2), 750 (4 SE2d 651); *Gossett v. State,* 201 Ga. 809 (41 SE2d 308); *Tatum v. State,* 206 Ga. 171, 177 (3) (54 SE2d 518). But in this case the evidence which the accused introduced in support of his petition shows without dispute that the fund which the contributors raised was to be paid as a reward to any person who furnished information leading to the apprehension and conviction of whoever murdered Carolyn Newell and Orville Steele regardless of who such perpetrator or perpetrators might be. The interest which the contributors had in the apprehension and conviction of the person or persons who murdered these two young people was no more than that which any good citizen would naturally have. In the circumstances of this case, we hold that the grand jurors were not disqualified to investigate and act on the charge against the accused even if they were related within the prohibited degree to one or more of the contributors to such reward fund. Nor would the action in excusing two of the grand jurors on motion of the defendant affect the finding of the remainder.

2. Prior to trial and on March 19, 1964, the defendant notified Judge Farris that he would on his trial avail himself of the right accorded him by Art. I, Sec. I, Par. IV of the Constitution of 1945 (*Code* § 2-104), which provides that "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." In connection with his notice he petitioned the court for an order granting him and his attorney the right: (1) To see, inspect, read and copy well in advance of his arraignment each and every written statement made by any witness and taken by any public official whose salary, compensation or fees are paid from the public treasury. (2) To inspect and copy written reports or statements in the

possession of the solicitor general which were prepared by employees of the State Crime Laboratory of Georgia and delivered to the solicitor general. And (3) to inspect and photograph clothing or any other object removed from the bodies of the deceased persons in possession of any public official. In this petition he also alleged that he was confined in the common jail of Floyd County and prayed for an order directing the Sheriff of Walker County to return him to that county and permit him to go in company with his attorney and the Sheriff of Walker County wherever he desired to go either in Walker County or any other place in the State of Georgia for the purpose of procuring evidence for his own defense, all at the expense of the accused; or in the alternative, that he be allowed to give an appearance bond in an amount not to exceed the total sum of $5,000. There is no statute or rule of procedure of force in this State which requires a solicitor general or other prosecuting officer to make his evidence, documentary or otherwise, available to the accused or his counsel before trial, *Walker v. State*, 215 Ga. 128, 131 (5) (109 SE2d 748); and the question of allowing bail to the accused in a capital felony case, and the amount to be fixed as such if allowed, is a question which addresses itself to the discretion of the trial judge, and in the circumstances of this case, we will not hold that he abused his discretion in refusing to grant bail to the accused in the total sum of $5,000 for the appearance of the accused to answer the two murder charges pending against him. There is therefore no merit in the contention that the court erred in denying the prayers of this petition.

3. This indictment was returned on August 22, 1963. The defendant moved to quash it on April 27, 1964, on the ground that the grand jurors who returned it were not drawn for service in open court as required by law. The motion to quash alleges that the grand jurors were drawn by Judge Fariss on July 15, 1963, in the office of the Clerk of the Superior Court of Walker County which office is on a floor of the Walker County courthouse below the courtroom where all regular sessions of the superior court of that county are held. The motion also alleges that the accused was in jail when the grand jury was drawn; that he did not know until April 1964, that the grand jury which indicted him had not been publicly drawn; that he relied on the presumption that Judge Fariss had performed his official duty and had complied with

the requirements of law in drawing such jury; and that since the grand jury which indicted him was not publicly drawn in open court, the indictment returned against him is illegal and void and for that reason should be quashed. His motion, though none of its allegations were denied, was stricken on oral motion of the solicitor general. *Code* § 59-203, provides: "The judges of the superior courts, at the close of each term, in open court, shall unlock the [jury] box, and break the seal, and cause to be drawn from compartment number 'one' not less than 18 nor more than 30 names to serve as grand jurors at the next term of the court." The court did not err in striking this challenge to the array of the grand jury; it came too late. It should have been made before the indictment against him was found and returned into court by the grand jury. His failure to make a timely objection to the grand jury amounted in law to a waiver of his right to do so. *Tucker v. State*, 135 Ga. 79 (68 SE 786); *Burns v. State*, 191 Ga. 60 (3), 64 (11 SE2d 350); *Heard v. State*, 210 Ga. 523 (1) (81 SE2d 467); *Cobb v. State*, 218 Ga. 10 (2, 3) (126 SE2d 231); *Sims v. Balkcom*, 220 Ga. 7, 9 (1) (136 SE2d 766) and the cases there cited. The challenge to the array of the grand jury in the *Burns* case, supra, was based on the judge's failure to draw them in open court. Since the challenge to the array of the grand jury in the case at bar was not made until after the accused was indicted by such grand jury, the court did not err in dismissing or striking it; and this is especially true since the record shows that the accused was represented by able counsel before the grand jury which indicted him was empaneled for service. It is argued that the decision in *Reich v. State*, 53 Ga. 73 (21 AR 215) requires a ruling different from the one here made. This contention is not meritorious. In *Reich* the accused was tried and convicted in the Mayor's Court of Columbus for the offense of keeping open a tippling house on the Sabbath day. Later a special presentment charging him with the same offense was returned by a grand jury in the Superior Court of Muscogee County. Before arraignment, he attacked the validity of the special presentment on the ground that an alien served as one of the grand jurors who returned it. His attack was overruled by the trial judge and this court reversed his ruling on the ground that his attack was good and timely made since Reich had no knowledge of the fact that a grand jury would by special presentment charge him again with the same offense.

4. The accused also challenged the array of traverse jurors when they were put on him. His challenging petition alleges that they were drawn for service on April 1 and 15, 1964, in the office of the Clerk of the Superior Court of Walker County; that they were not drawn publicly in open court nor at the place where all regular sessions of the court are held, namely, the courtroom on the third floor of the Walker County Courthouse. There was no denial of any of the allegations of the challenge, but on oral motion of the solicitor general it was stricken and the prayer that new jury panels be drawn in the manner and way provided by law and put on him for the selection of a qualified jury was denied. This was error. The challenge to the array of these traverse jurors was timely made. The solicitor general's oral motion in the nature of a general demurrer admits that they were not publicly drawn in open court. *Holcombe v. Jones,* 197 Ga. 825 (1), 829 (30 SE2d 903); *Whitfield v. Whitfield,* 204 Ga. 64 (1) (48 SE2d 852); and *Brant v. Brant,* 209 Ga. 151 (71 SE2d 209). There was no waiver by the accused of his right to have them properly drawn in open court. Under *Code* § 59-701 the judge was required to draw them in open court in the same way and manner as *Code* § 59-203 requires that grand jurors be drawn. The right of trial by jury is firmly embedded in our system of jurisprudence and the procedure prescribed for the selection of juries is of long standing and should not be whittled away by judicial decisions. The requirement that juries must be drawn in open court is a safeguard or guarantee against secret or Star Chamber court proceedings; it is procedure which enables the public to observe the conduct of the judge in drawing juries and thus prevent any possible corruption or suspicion of corruption in this vital part of our jury system. The unanimous decision in *Zugar v. State,* 194 Ga. 285 (21 SE2d 647), should be applied and followed in this case; in principle they involve like questions. *Zugar's* case was decided by this court in 1942 and the meaning of the term "in open court" was then elaborately defined in the opinion which Mr. Justice Duckworth (now Chief Justice) prepared for the court. By that decision the term "in open court" was so clearly defined that its meaning since then ought not to be misunderstood, either by judges or lawyers. In that case there was a motion to quash the indictment which charged the accused with murder on the ground that it was not returned in open court as required by law. There the

record shows that the grand jury's bailiff in the presence of the judge handed the indictment to the clerk in the latter's office. No contention was made that it had been altered in any way since it left the grand jury room. It was held in that case that the court erred in not sustaining a motion to quash the indictment on the sole ground that it was not returned in open court and that such error rendered nugatory all subsequent proceedings in the case, including the verdict of guilty. Compliance with the requirement that juries must be drawn in open court is just as essential to the validity of a criminal prosecution as compliance with the requirement that the indictment against an accused to be valid must be returned in open court. Established rules of procedure for judicial proceedings should never be referred to as "technicalities."

In *Cochran v. State,* 62 Ga. 731, Mr. Justice Bleckley said: "Those who are impatient with the forms of law ought to reflect that it is through form that all organization is reached. Matter without form is chaos; power without form is anarchy. The state, were it to disregard forms, would not be a government, but a mob. Its action would not be administration, but violence. The public authority has a formal embodiment in the state, and when it moves, it moves as it has said by its laws it will move. It proceeds orderly, and according to pre-established regulations. The state, though sovereign, cannot act upon the citizen in a different manner from that which the laws have ordained. Courts are bound by the law no less than the prisoner at the bar." In *Zugar's* case, supra, it was said, p. 290: "It may be observed that public officials are made conscious of the duty to faithfully perform official acts when they are acting in the presence of the general public; and this fact causes the public to have confidence in the officials, and hence confidence in the governmental departments where such officials serve." This error rendered nugatory the subsequent proceedings in the instant case, and since it did, a new trial must be and is hereby ordered.

*Judgment reversed. All the Justices concur. Quillian, J., concurs in the judgment but not in all that is stated in the first division of the opinion.*

ARGUED FEBRUARY 8, 1965—DECIDED FEBRUARY 23, 1965—
REHEARING DENIED MARCH 16, 1965.

*Gleason & Brown, Frank M. Gleason, Burton Brown,* for plaintiff in error.

*Earl B. Self, Solicitor General, Bobby Lee Cook, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.