## 30197. TENNON v. THE STATE.

PER CURIAM.

Hugh H. Tennon, III, appeals from his conviction of murder in Crisp Superior Court and sentence to life imprisonment.

1. He enumerates as error the denial by the trial court of his motion to quash the indictment and his challenge to the array of grand and traverse jurors. He contends that the grand jury list, from which the grand jury panel that indicted him was drawn, was composed of a disproportionately high number of white males. He also contends that the traverse jury list from which the trial jury was selected, was also illegally composed.

First we consider the challenge to the grand jury. On October 18, 1970, a policeman was shot in his police car in Cordele, Georgia, by a man he was taking to the station for selling newspapers without a permit. The police officer died later that day from multiple bullet wounds. A black man was seen leaving the police car after it stopped. At trial, appellant stated that the officer slapped him and drew his pistol, that they struggled and that the gun went off.

The appellant was indicted by the grand jury on October 28, 1970. However, he was not arrested until he was found in Wisconsin almost two years later. In September 1972 he was returned to Georgia. The motion to quash the indictment and the challenge to the array of grand and traverse jurors was filed November 7, 1972. The appellant was arraigned March 19, 1973, after a hearing at which the motion and challenge were denied.

A challenge to the array of grand jurors is waived unless timely filed. As stated in *Sanders v. State,* 235 Ga. 425: "In order for such a motion to be entertained by the trial court, it must be made prior to the return of the indictment or the defendant must show that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned; otherwise, the objection is deemed to be waived. *Estes v. State,* 232 Ga. 703, 708 (208 SE2d 806) (1974). Accord, *McHan v. State,* 232 Ga. 470,

471 (2) (207 SE2d 457) (1974); *Simmons v. State,* 226 Ga. 110, 111 (1a) (172 SE2d 680) (1970); *Williams v. State,* 210 Ga. 665, 667 (82 SE2d 217) (1954)."

Appellant in this case made no effort to show that he had no knowledge, prior to the return of the indictment, of the alleged illegal composition of the grand jury. We find under the facts of this case that appellant waived the objection to the composition of the grand jury.

The evidence with regard to the 1972 traverse jury presented by the appellant was not sufficient to establish a prima facie case since there was no evidence of the racial composition of the traverse jury.

2. The defendant contends that the court erred in refusing to exclude 13 prospective jurors for cause.

Each of the jurors was asked the statutory voir dire questions (Code § 59-806) and each answered that he had not formed and expressed an opinion in regard to guilt or innocence from having seen the crime committed or having heard any of the testimony, that he had no prejudice or bias for or against the defendant, and that his mind was impartial between the state and the defendant. Defendant's counsel conducted extensive questioning of each prospective juror individually, many of the examinations taking up 50 pages of transcript. During these lengthy examinations several of the prospective jurors admitted that they had formed a belief as to the guilt of the defendant based on newspaper accounts of the occurrence. Some said that the defendant would have to put on evidence to overcome this belief. Some said they would be more apt to believe a police officer than an ordinary citizen. And one or two indicated that they believed that blacks are more inclined to commit crimes than whites.

During the examination of each of these prospective jurors, each one stated that he or she would take the law as given in charge by the court and apply it to the evidence produced. Each also said that he or she could set aside any preconceived opinions in applying the law as charged.

When a prospective juror has formed an opinion based on hearsay (as opposed to being based on his having seen the crime committed or having heard the testimony under oath), to disqualify such individual as a juror on the

ground that he has formed an opinion on the guilt or innocence of a defendant, the opinion must be so fixed and definite that it would not be changed by the evidence or charge of the court upon the trial of the case. *Roach v. State,* 221 Ga. 783 (2) (147 SE2d 299) (1966); *Butler v. State,* 231 Ga. 276 (3) (201 SE2d 448) (1973). It would be unrealistic to require that a juror must not have read or heard about the crime, especially in a case such as this in a community of its size.

The expressions concerning the supposed propensity of blacks to commit crimes and the belief in the truthfulness of police officers do not show bias to the extent requiring that a challenge for cause be sustained. Instead they show the truthfulness of the prospective jurors which assists counsel in making his peremptory challenges.

We find the enumeration of error on the failure to exclude prospective jurors for cause to be without merit.

3. At the conclusion of the evidence the court charged the jury on the applicable law, including the correct charge on circumstantial evidence. After the jury retired to begin deliberations, they requested a recharge on four questions. The first three questions required recharge on malice, voluntary manslaughter and credibility of witnesses. The fourth question was "Can we draw a reasonable conclusion using the circumstances presented to us?" Out of the hearing of the jury the judge stated, regarding the fourth question: "I'm not sure I understand exactly what they're talking about there. I don't think the Court could answer the question 'yes' or 'no.'" The court then recharged on malice, voluntary manslaughter, reasonable doubt and credibility of witnesses. The judge asked if any member of the jury felt that the court had not answered the questions which were asked. One juror asked for the charge on malice again. After the judge so charged, he again asked if the jury's questions had been answered. They indicated that they had and retired to resume deliberation. Defense counsel asked for a recharge on circumstantial evidence, which the judge refused on the ground that the questions asked had been answered.

The defendant argues that the judge was required,

after receiving such question from the jury, to recharge on the law of circumstantial evidence, especially after a specific request by defendant. He contends that the question clearly suggests the jury's need for clarification on what they were authorized to conclude based upon circumstances.

We do not find that the judge committed reversible error. The defendant relies on *Bradley v. State,* 232 Ga. 58 (205 SE2d 204) (1974), but that case found reversible error in not charging on circumstantial evidence in the first instance. Here the court correctly charged on the law of circumstantial evidence before the jury began their deliberations. In addition, here the judge asked the members of the jury twice after his four point recharge if all their questions had been answered and the jurors showed that they had.

The trial judge interpreted the jury's fourth question to be a request for recharge as to reasonable doubt, which he gave. The jury showed that their questions had been answered by the recharge and we cannot say as a matter of law that the question asked by the jury was not answered.

4. The defendant argues that the court erroneously shifted the burden of proof to the defendant by its charge on the presumption of malice. He contends that there was evidence in the case showing mitigating circumstances, justification, or alleviation and that in such a case it is error to charge that malice will be presumed. He cites *Jordon v. State,* 232 Ga. 749 (5) (208 SE2d 840) (1974).

In *Jordon v. State,* supra, the only evidence to show that the defendant committed the homicide by the use of a deadly weapon was by testimony of police officers concerning statements of the defendant which also contained language from which the jury could have found that the homicide was justified. In *Jordon* it was held to be error under the facts of that case for the court to charge that "when the State's evidence shows the commission of the homicide by the accused, by the use of a deadly weapon the law presumes murder."

In this case, however, the charge on malice was adjusted to the evidence and we find no error.

5. The defendant cites as error the failure of the court to give a charge on the law of involuntary

manslaughter because the testimony of several witnesses suggested that the homicide could have been unintentional.

Code Ann. § 26-1103 defines involuntary manslaughter as the commission of an unlawful act, other than a felony, which unintentionally causes the death of another, or the commission of a lawful act in an unlawful manner which unintentionally causes death. Neither of these situations existed in this case. The court did instruct on the possibilities which were consistent with the evidence—murder, voluntary manslaughter, justifiable homicide and accident.

There was no error in not charging on involuntary manslaughter.

6. The verdict of guilty was sustained by the evidence and is not contrary to the law. The court did not err in not granting a new trial.

*Judgment affirmed. All the Justices concur, except Gunter and Hill, JJ., who dissent.*

ARGUED SEPTEMBER 3, 1975 — DECIDED NOVEMBER 24, 1975.

*King, Phipps & Associates, C. B. King, Herbert E. Phipps,* for appellant.

*D. E. Turk, District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Staff Assistant Attorney General,* for appellee.

HILL, Justice, dissenting.

I respectfully dissent to Division 1 of the court's opinion. Heretofore, this court has found that a defendant waived his right to challenge the composition of the grand jury when the defendant was arrested, and had counsel, prior to indictment. Here the doctrine of waiver is being extended to apply to a defendant who was arrested and had counsel after the indictment. I would hold that the motion to quash the indictment was timely made. See *Estes v. State,* 232 Ga. 703 (208 SE2d 806) (1974), and cits. I would then consider that motion on its merits.

To make out a prima facie case of jury discrimination the defendant must prove (1) that an opportunity for

discrimination existed in that the source from which the potential jurors were drawn was racially biased and (2) that the use of such an "infected source" produced a significant disparity between the proportion of blacks on the jury list and those found in the community. Whitus v. Georgia, 385 U. S. 545 (87 SC 643, 17 LE2d 599) (1967); *Pass v. Caldwell*, 231 Ga. 192 (200 SE2d 720) (1973). If the defendant succeeds in presenting a prima facie case, then the burden shifts to the state to explain the discriminatory figures. Whitus v. Georgia, supra; *Pass v. Caldwell,* supra.

Code Ann. § 59-106 (Ga. L. 1968, p. 533; 1973, p. 484) provides that the board of jury commissioners shall compile, maintain and revise a jury list of intelligent and upright citizens of the county and that in composing such list the primary source will be the official registered voters list. In order to reach a fairly representative cross section, the Code section allows the jury commissioners to supplement this list. The registered voters list contains names unidentified as to race.

In this case the "sources" of the 1969 jury list were the 1967 jury list, the voters list, the telephone book and the city directory. The 1967 jury list was drawn from the tax digest. In addition, there was testimony that in Cordele, the race of an individual could be determined accurately from his address. Thus we should conclude from the use of the 1967 jury list, the telephone directory and the city directory, that an opportunity for discrimination existed in the racially biased sources from which potential jurors were selected in 1969.

Next we should turn to the second requirement to see if the use of these sources produced a significant disparity between the proportion of blacks on the jury list and those in the community. The 1970 census shows that 33% of the people in the community over 21 were black whereas the grand jury list was 91.5% white. The disparity between the percentage of blacks on the grand jury list and the percentage of potentially eligible black jurors is sufficient to make a prima facie case.

At this point the burden shifts to the state to explain the disparity. The jury commissioners testified that they did not exclude an individual because he was black nor

did they select another because he was white. Affirmations of good faith in making individual selections are insufficient to overcome a prima facie case. See *Alexander v. Louisiana*, 405 U. S. 625 (92 SC 1221, 31 LE2d 536) (1972).

In *Mitchell v. State*, 226 Ga. 450 (1) (175 SE2d 545) (1970), this court found that the state rebutted a prima facie case. The evidence offered by the state in the case before us does not rebut the prima facie case made by appellant and the motion to quash the indictment should have been granted.