**Hugh H. TENNON, III,
Petitioner-Appellee,**

*v.*

**Dr. James RICKETTS, Warden,
Respondent-Appellant.**

**No. 77–2356.**

United States Court of Appeals,
Fifth Circuit.

June 13, 1978.

Kirby G. Atkinson, Asst. Atty. Gen., Arthur K. Bolton, Atty. Gen., John C. Walden, Robert S. Stubbs, II, Richard L. Chambers, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellant.

Chevene B. King, Herbert E. Phipps, Carl A. Bryant, Henry E. Williams, Albany, Ga., for petitioner-appellee.

Before TUTTLE, COLEMAN and CLARK, Circuit Judges.

COLEMAN, Circuit Judge.

A police officer in Cordele, Georgia, was shot and killed more than seven years ago. The habeas corpus appellee, Hugh H. Tennon, III, was convicted of murdering the officer and sentenced to imprisonment for life. On a 5–2 vote, the Supreme Court of Georgia affirmed, *Tennon v. State,* 235 Ga. 594, 220 S.E.2d 914 (1975), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976).

The Supreme Court of Georgia wrote:

"On October 18, 1970, a policeman was shot in his police car in Cordele, Georgia, by a man he was taking to the station for

selling newspapers without a permit. The police officer died later that day from multiple bullet wounds. A black man was seen leaving the police car after it stopped. At trial, appellant stated that the officer slapped him and drew his pistol, that they struggled and that the gun went off." 220 S.E.2d 915.

As to Tennon's failure to challenge the composition of the grand jury which indicted him, the Court said:

"The appellant was indicted by the grand jury on October 28, 1970. However, he was not arrested until he was found in Wisconsin almost two years later. In September 1972 he was returned to Georgia. The motion to quash the indictment and the challenge to the array of grand and traverse jurors was filed November 7, 1972. The appellant was arraigned March 19, 1973, after a hearing at which the motion and challenge were denied.

"A challenge to the array of grand jurors is waived unless timely filed. As stated in *Sanders v. State,* 235 Ga. 425, 219 S.E.2d 768(1); 'In order for such a motion to be entertained by the trial court, it must be made prior to the return of the indictment or the defendant must show that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned; otherwise, the objection is deemed to be waived. *Estes v. State,* 232 Ga. 703, 708, 208 S.E.2d 806 (1974). Accord, *McHan v. State,* 232 Ga. 470, 471(2), 207 S.E.2d 457 (1974); *Simmons v. State,* 226 Ga. 110, 111(1a), 172 S.E.2d 680 (1970); *Williams v. State,* 210 Ga. 665, 667, 82 S.E.2d 217 (1954).'" 220 S.E.2d at 916.

Faced with this outcome, Tennon sought review in the United States Supreme Court. The petition for *certiorari* posed the following question:

"*Question No. 1.* Was petitioner denied due process and equal protection of the laws in violation of the Fourteenth Amendment by the exclusion of blacks and women from the grand and traverse juries that indicted and convicted him?"

*Certiorari* was denied June 1, 1976, 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833.

Petitioner then turned for relief to the ancient and ever-available writ of habeas corpus. In the words of the petition, he "urged anew" the same grounds previously submitted to the highest Courts of both the State and the Nation, including the failure to quash the indictment because it was returned by an unconstitutionally composed grand jury.

■ Jury discrimination claims must be raised in a timely fashion, *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Newman v. Henderson,* 5 Cir., 1974, 496 F.2d 896, 897; *Morris v. Sullivan,* 5 Cir., 1974, 497 F.2d 544; *Watkins v. Green,* 5 Cir., 1977, 548 F.2d 1143.

■ Moreover, it is for the Georgia Supreme Court, not this Court, to expound the decisional rules of that jurisdiction, *Morris v. Sullivan,* 5 Cir., 1974, 497 F.2d 544; *Watkins v. Green,* 5 Cir., 1977, 548 F.2d 1143.

■ On collateral attack, the state is under no burden to show that the waiver of the right to file timely objections to the composition of a grand jury was knowingly and understandingly made. To the contrary, he who tardily brings the claim must make a showing of cause for the failure and must also make a showing of actual prejudice. *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976). This is not inconsistent with the Georgia rule that a challenge to the array of grand jurors may not be entertained by a trial court unless it is made prior to the return of the indictment or the defendant has shown that he had neither actual nor constructive knowledge of the alleged illegal composition of the grand jury prior to the time the indictment was returned, page 1245 *ante.*

■ On the other hand, it is a denial of due process to deny a defendant an *opportunity* to comply with rules of timeliness,

*Reece v. State of Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955).

Reece, a black man, was arrested for the alleged rape of a white woman and held in jail until indicted three days later. Counsel was appointed the next day after indictment. Before arraignment, it was moved that the indictment be quashed on the ground that Negroes had been systematically excluded from service on the grand jury. The Georgia Supreme Court held that the motion was properly denied because by Georgia practice objections to the grand jury had to be made before the indictment is returned. The conviction, however, was reversed on other grounds. On remand, the motion to quash was renewed, asserting that the defendant had neither knowledge of the grand jury nor the benefit of counsel before his indictment. The state's demurrer to this effort was sustained. Reece was again tried, convicted, and sentenced to be electrocuted. The conviction was affirmed. The United States Supreme Court reversed, noting that the grand jury was impaneled and sworn before Reece had been arrested and that it would be utterly unrealistic to say that Reece had an opportunity to challenge the grand jury when no counsel had been provided for him until the day after he was indicted. The Court held that the right to object to a grand jury presupposes an opportunity to exercise that right, but did not invalidate the rule.

Relying, in the main, on *Reece,* the District Court reasoned that the petitioner

"was indicted at a time when he did not have counsel and, indeed, when he was not even in the state. As soon as practicable after his arrest and retention of counsel, however, he moved to quash the indictment. As in *Reece,* therefore, the application of Georgia's waiver rule in these circumstances denied petitioner an adequate opportunity to assert his right to be indicted by a constitutional tribunal and, as such, cannot be applied to bar consideration of his grand jury claim on the merits by this court [footnotes omitted]."

We are of the opinion that the District Court failed appropriately to consider the teachings of *Michel v. Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

In his appearance before the federal habeas corpus court, Tennon testified that after the officer was killed, he fled to Milwaukee, where he was apprehended about the middle of May, 1971. Represented by counsel, he contested extradition and was not returned to Georgia until September, 1972.

After the death of the police officer, in his police car, from multiple wounds inflicted by bullets from his own gun, while Tennon was under arrest, with no one else involved, it is inconceivable that Tennon could have been unaware that Georgia would be searching for him and might likely indict him. Indeed, in the federal district court, he testified that during his absence from the state he did not know whether any criminal proceedings were pending against him but he had so presumed (Record, II, 14).

Tennon was indicted on October 28, 1970, at a time when he was absent from the state as one fleeing from the scene of a homicide.

In *Michel,* Louisiana had a statutory rule that objections to a grand jury had to be made within three judicial days after the term or before trial, whichever came the earlier. Poret, a co-defendant in the case, was convicted of rape and sentenced to death. Shortly after the crime was committed, he had eluded police officers and fled the state. He was indicted December 11, 1950, but was not arrested and nothing was known of his whereabouts until late 1951, when it was discovered that he was in prison in Tennessee. He had been at large for five months before going to that prison. He was returned to Louisiana, October 3, 1952. At arraignment he was represented by privately retained counsel. On November 7 he moved to quash the indictment. The trial court held that Poret had been a fugitive from justice, therefore the rule of timeliness for grand jury challenges would not be suspended or nullified for his benefit. In a direct, rather than a collateral attack,

Poret argued that he had had no opportunity to comply with the rule. The Supreme Court construed Poret's contention to be a claim that flight in violation of federal law [18 U.S.C. § 1073] is converted into a federal immunity from the operation of a valid state rule. Poret had been without an attorney but there had been no showing that he could not have filed his objections had he not elected to flee. The Supreme Court concluded that by his own action Poret had failed to avail himself of an adequate state remedy.[1] Moreover, the Supreme Court pointed out that Poret had not filed his motion to quash at the earliest available opportunity. The denial of his motion to quash was not a denial of due process.

In a footnote, the District Court expressed the view that the *Michel* decision did not apply to Tennon's situation because the Louisiana rule prescribed a time limit after indictment, whereas Georgia requires that the challenge be filed prior to indictment. We do not perceive the basis for this distinction. Both rules specify a limitation on the time for filing of challenges. The shooting took place on October 18, 1970. The indictment was returned ten days later. There is no showing in the record that had Tennon remained in the state there would have been no arrest or no counsel or no opportunity to challenge the composition of the grand jury before the return of the indictment.

In *Reece*, the grand jury had been chosen before the defendant had so much as been arrested. He had not fled the state. There was no showing that before the grand jury was chosen he should have anticipated indictment and been prepared for that eventuality. In short, there had been no opportunity to comply with the rule. In the present case, however, it was Tennon, not Georgia, who caused his inability to comply. We think the principles enunciated in Po-

ret's case [*Michel v. Louisiana*] foreclose Tennon's claims.

In a somewhat similar case (Georgia habeas corpus) the Fifth Circuit recently had occasion to comment on the consequences of fleeing state jurisdiction, *Strickland v. Hopper*, 5 Cir., 1978, 571 F.2d 275. After conviction and pending the disposition of a motion for a new trial, Strickland escaped. The trial court denied the new trial motion on the ground that Strickland was a fugitive from justice. We held that the escape amounted to a deliberate by-pass, that "in a very practical sense petitioner knowingly abandoned the privilege of seeking in state court to vindicate his federal claims".

We have great deference for Judge Tuttle's dissenting view of what he believes to be (or should be) the applicable Georgia law. The difficulty is that we are not in position to re-examine what the Georgia Supreme Court has held on that subject. As discussed *ante*, that Court enunciated the applicable Georgia law when it considered and decided Tennon's direct appeal.

The Supreme Court of the United States has told us "We usually walk on treacherous ground when we explore state law [footnote omitted], for state courts, state agencies, and state legislatures are its final expositors under our federal regime", *Brady v. State of Maryland*, 373 U.S. 83, 90, 83 S.Ct. 1194, 1198, 10 L.Ed.2d 215 (1963).

The Fifth Circuit has held that "the authoritative legislative and judicial tribunals of the states are the ultimate instructors of the federal courts on matters of state law", *Steele v. G. D. Searle & Co.*, 5 Cir. 1973, 483 F.2d 339, 343 (per Goldberg, J.).

■ Consequently, the majority feels that it may not second guess the Georgia Supreme Court; that it may not revise, modify, or overrule what that court held

1. "We do not believe that the mere fugitive status existing here excuses a failure to resort to Louisiana's established statutory procedure available to all who wish to assert claimed constitutional rights. This is not to say that the act of fleeing and becoming a fugitive deprives one of federal rights. We hold only that due regard for the fair as well as effective administration of criminal justice gives the State a legitimate interest in requiring reasonable attacks on its inquisitorial process and that the present case is not one in which this interest must bow to essential considerations of fairness to individual defendants." *Michel v. Louisiana, supra*, 350 U.S. at 98, 76 S.Ct. at 162–163 (footnote omitted).

with reference to the Georgia law here involved. That law being what it is, the undisputed fact is that Tennon fled the state immediately after the homicide. Although he presumed that the state would wish to arrest him, he deliberately denied himself the opportunity to "notice before indictment". He was indicted while he was yet an unlocated fugitive in a distant state. After apprehension, he says that the federal Constitution guarantees him the right to proceed as if he had not fled; that is, he should be treated more advantageously than those who remain within the jurisdiction and submit in an orderly manner to prescribed procedures.

We are not convinced that the Constitution mandates such special treatment for fugitives.

The Judgment of the District Court setting aside Tennon's conviction is reversed. The cause is remanded for consideration of claims which the District Court did not reach or decide.

REVERSED and REMANDED.

TUTTLE, Circuit Judge, dissenting:

I respectfully dissent. Tennon stands convicted of murder and sentenced to life imprisonment following an indictment by a grand jury which this record conclusively shows was illegally constituted because of race. The majority holds that Tennon may not challenge the illegal composition of the grand jury because he did not do so *before indictment*, which this majority deems to be required by a Georgia procedural rule.

My disagreement is based on three distinct grounds. First, at the time of Tennon's indictment, trial, and conviction there was no such rule as that relied upon by the majority when the attack upon the racial composition of the grand jury is raised by either state or federal habeas corpus; second, if there is such a rule it is too uncertain of content, imprecise of meaning, doubtful of applicability and sporadic of enforcement in the Georgia courts to form the basis of a waiver if not followed; third, there is here no evidence of an actual waiver.

## I.

I disagree with the majority that *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), dictates reversal in this case. The state prisoner who sought federal habeas corpus relief in *Francis* had been brought to trial in Louisiana in 1965 upon an indictment for felony murder. A Louisiana *statute* in force at the time of his trial clearly required that objections to the composition of the grand jury had to be made within a specified time after the expiration of the grand jury's term or before trial, whichever was earlier. Otherwise, the same statute provided that "all such objections shall be considered as waived and shall not afterwards be urged or heard." 425 U.S. at 537, 96 S.Ct. at 1709. No such objection *in any form* was made by or on behalf of Francis. He did not even appeal his conviction, but six years later he sought collateral relief in a state court, asserting for the first time that blacks had been excluded from the grand jury which indicted him. The state court denied relief, holding that Francis had waived this claim by failing to raise it before trial. Francis subsequently petitioned for a writ of habeas corpus in federal court. The district court granted the writ on the ground of unconstitutional racial discrimination in the composition of the grand jury. Our Court reversed on the basis of *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), in which the Supreme Court had held that a federal prisoner who had failed to make a pretrial challenge to the composition of the grand jury which indicted him in compliance with Fed.R. Crim.P. 12(b)(2) could not later raise that ground in an action for collateral relief brought nearly three years later under 28 U.S.C. § 2255 unless he showed cause for the untimely objection.

In affirming our judgment and holding that Francis must show both cause and actual prejudice, the Supreme Court stated:

There can be no question of a federal district court's power to entertain an ap-

plication for a writ of habeas corpus in a case such as this. 28 U.S.C. §§ 2241, 2254. The issue, as in the *Davis* case, goes rather to the appropriate exercise of that power. This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forego the exercise of its habeas corpus power. See *Fay v. Noia*, 372 U.S. 391, 425–426, [83 S.Ct. 822, 9 L.Ed.2d 837]. *The question to be decided is whether the circumstances of this case are such as to invoke the application of those considerations and concerns.*

425 U.S. at 538–539, 96 S.Ct. at 1710 (emphasis added). The Court then proceeded to elaborate upon the concerns which underlay its decision in *Davis*. Those concerns related to assuring the prompt and efficient determination of claimed defects in the institution of criminal proceedings. Finding that similar state interests supported the Louisiana statute, the Court stated:

> If, as *Davis* held, the federal courts must give effect to these important and legitimate concerns in § 2255 proceedings, then surely considerations of comity and federalism require that they give *no less effect* to the same clear interests when asked to overturn state criminal convictions.

425 U.S. at 541, 96 S.Ct. at 1711 (emphasis added).

*Francis* makes clear, then, that there is no *jurisdictional* barrier to the grant of habeas relief in the instant case. Rather, we are instructed to examine "the circumstances of this case" to determine whether considerations of comity and federalism should cause us to forego the exercise of our power. We must give "no less effect"

to valid state interests, but certainly nothing in *Francis* requires us to give greater effect than Georgia itself affords those interests. Indeed, the Court observed in a footnote:

> In a case where the state courts have declined to impose a waiver but have considered the merits of the prisoner's claim, different considerations would, of course, be applicable. See *Lefkowitz v. Newsom*, 420 U.S. 283, [95 S.Ct. 886, 43 L.Ed.2d 196.]

425 U.S. at 542 n. 5, 96 S.Ct. at 1711 n. 5.[1]

It seems to me of crucial importance that *Francis* dealt with a state procedural rule embodied in statutory form which clearly imposed a waiver in the event of noncompliance. Moreover, that waiver extended to *all* subsequent state court proceedings, as was made clear by the state court's denial of collateral relief on the basis of waiver when the jury issue was first raised six years after *Francis'* conviction. But in Tennon's case, not only was Georgia's judge-made rule uncertain in its formulation (as will be discussed below), rather than statutory and clear in content; and not only was Tennon's challenge to the grand jury composition made well in advance of arraignment rather than many years after conviction; and not only was the Georgia Supreme Court's finding of waiver made on direct appeal of the conviction rather than in a state habeas action; but also the Georgia law in force at the time of Tennon's conviction, Ga.Code Ann. § 50–127,[2] specifically eschewed an automatic imposition of waiver in subsequent state habeas corpus proceedings. The majority opinion in this case thus creates the anomalous and untenable result of giving a *greater* effect to Tennon's supposedly un-

---

1. In *Lefkowitz* the Supreme Court held that where state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, a defendant who had unsuccessfully appealed his constitutional claims to the state courts was not precluded from pursuing those constitutional claims in a federal habeas corpus proceeding.

2. We specifically held in *Lumpkin v. Ricketts*, 551 F.2d 680, 682 n. 2 (5th Cir. 1977), that the law in effect at the time of trial controlled the waiver issue in this kind of case. The prisoner in *Lumpkin* had been tried before Georgia enacted § 50–127 and we said that he could not rely upon it. The Supreme Court also applied the law in effect at the time of trial in *Francis v. Henderson, supra.*

timely objection to the grand jury than the Georgia courts would under its own habeas corpus statutes. And this result is said to flow from *Francis*, where principles of comity rather than jurisdiction were implemented.

At the time of Tennon's conviction, Ga. Code Ann. § 50–127 provided for purposes of state habeas corpus relief:

> Any person imprisoned by virtue of a sentence imposed by a State court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Georgia or the laws of the State of Georgia may institute a proceeding under this section. Rights conferred or secured by the Constitution of the United States shall not be deemed to have been waived unless it is shown that there was an intentional relinquishment or abandonment of a known right or privilege which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently.[3]

The impact of § 50–127 upon a petitioner seeking habeas corpus relief in a Georgia court was fully explored in *Mitchell v. Smith*, 229 Ga. 781, 194 S.E.2d 414 (1972). The Georgia Supreme Court there observed that on the petitioner's direct appeal of his conviction it had been unable to consider the challenge to the grand jury composition because the issue had not been raised in the trial court. The court then stated:

> In a habeas corpus proceeding a constitutional right is not deemed to have been waived unless it is shown "that there was an intentional relinquishment or abandonment of a known right or privilege, which relinquishment or abandonment was participated in by the party and was done voluntarily, knowingly and intelligently," *Code Ann.* § 50–127(1) (Ga.L. 1967, pp. 835, 836). The habeas corpus court was therefore in error in refusing to hear evidence on the question of the illegal composition of the jury, which question had not previously been decided.

229 Ga. at 786, 194 S.E.2d at 418. The court then proceeded to decide the constitutional issue on its merits.

In *Ferguson v. Caldwell*, 233 Ga. 887, 213 S.E.2d 855 (1975), the jury composition issue was first raised in the Georgia court on a petition for habeas corpus. The Georgia Supreme Court expressly acknowledged that the question of waiver was controlled by § 50–127 but went on to find an express waiver of the petitioner's claim because it had not been raised at trial, on direct appeal, on certiorari to the United States Supreme Court, in his extraordinary motion for new trial, in his appeal from the denial of that motion, in his application for a writ of certiorari from that decision, or in his first petition for state habeas corpus relief. And if that was not a sufficient basis for a finding of waiver, the court went on to decide the merits of the jury issue. *See also Johnson v. Caldwell*, 228 Ga. 776, 187 S.E.2d 844 (1972); *Strauss v. Stynchcombe*, 224 Ga. 859, 165 S.E.2d 302 (1968).[4]

This Court has previously held that § 50–127 effected a change in Georgia's

---

3. This section was amended in 1975. The current version now provides:

> The right to object to the composition of the grand or traverse jury will be deemed waived under this Section, unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection *after the conviction and sentence has* [sic] *otherwise become final.* (emphasis added).

The final phrase suggests that the statute is addressed to situations where, as in *Francis*, the defendant has not raised his objection until he seeks collateral review. Neither this section nor the earlier version of it makes any attempt to codify the timing requirements for challenging the grand jury composition. These have been and remain judge-made.

4. In *Atkins v. Martin*, 229 Ga. 815, 194 S.E.2d 463 (1972), the court held that the failure of the habeas corpus petitioner to raise the jury composition issue until after verdict constituted a waiver. However, it is not clear from the decision whether the petitioner had been tried before or after July 1, 1967, the effective date of § 50–127. The court relied upon *Moore v. Dutton*, 223 Ga. 585, 157 S.E.2d 267 (1967), which clearly involved a petitioner who had been tried before § 50–127 was enacted.

waiver rule in *Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir. 1977). However, because the petitioner there had been tried under the old Georgia waiver rule, we held that the new statute could not aid him. (See note 2 *supra.*)

I believe that the majority has placed unwarranted reliance upon the Georgia Supreme Court's resolution of the waiver issue in Tennon's direct appeal to that court. This is not a situation in which an adequate and independent state procedural ground may present a bar to federal jurisdiction. That principle pertains only to the appellate jurisdiction of the United States Supreme Court, and we are not asked here to review the decision of the Georgia court. It is beyond dispute that the "question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966). While in another context I would not necessarily disagree with the majority's statement that "it is for the Georgia Supreme Court, not this Court, to expound the decisional rules of that jurisdiction," I do seriously disagree with what the "decisional rules" are. Not only has the majority failed to examine the appropriate decisional rules of Georgia, but it has also placed controlling reliance upon a state court's decision in a manner which extends a much more tender concern for the procedural rule than the State itself does, which is not required by the holding of *Francis v. Henderson, supra,* and which contravenes the federal law which should be controlling here.

## II.

A wholly different basis for refusing to find that Tennon has waived his right to challenge the composition of the grand jury which indicted him is the uncertain formulation of Georgia's judge-made procedural rule. In holding that Tennon had waived his challenge to the array of grand jurors, the Georgia Supreme Court, quoting from *Sanders v. State,* 235 Ga. 425, 219 S.E.2d 768 (1975), stated:

"In order for such a motion to be entertained by the trial court, it must be made prior to the return of the indictment or the defendant must show that he had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned; otherwise, the objection is deemed to be waived. *Estes v. State,* 232 Ga. 703, 708, 208 S.E.2d 806 (1974). Accord, *McHan v. State,* 232 Ga. 470, 471(2), 207 S.E.2d 457 (1974); *Simmons v. State,* 226 Ga. 110, 111(1a), 172 S.E.2d 680 (1970); *Williams v. State,* 210 Ga. 665, 667, 82 S.E.2d 217 (1954)."

*Tennon v. State,* 235 Ga. 594, 594–95, 220 S.E.2d 914, 916 (1975), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976). Postponing for the moment the question whether Tennon actually complied with the rule thus stated, I find it patently unfair to hold Tennon to a waiver of an important constitutional right when other decisions of the Georgia Supreme Court have formulated a different rule, with which Tennon undeniably did comply. In *Cobb v. State,* 218 Ga. 10, 21–22, 126 S.E.2d 231, 239 (1962), where the defendant first asserted his challenge to the grand jury by way of a motion for new trial after his conviction, the Georgia Supreme Court stated:

This court has consistently held that the illegal exclusion of a segment of citizens on account of race or color is grounds for timely challenge to the array of grand jurors and traverse jurors, and in some cases the objection to the grand jury may be interposed by a plea in abatement.

. . .

3. Objection to the composition of a grand jury must be raised, if at all, by challenge to the array duly presented before the indictment is returned *or by plea in abatement filed before arraignment.* . . . (emphasis added).

\* \* \* \* \* \*

4. An exception to this rule recognized by this court, and the Supreme Court of the United States, is that, where a person accused of a crime is not afforded the opportunity to make appropriate

objections to the illegal composition of the grand jury or the traverse jury before indictment or during the progress of the trial, he may raise the issue by motion for new trial or by habeas corpus proceedings.

It is absolutely clear from the record in this case that Tennon made his objection to the grand jury before his arraignment. In fact, he filed his motion on November 7, 1972, and was not arraigned until March 19, 1973.

Several other Georgia cases add to the confusion about the precise contents of the procedural rule for jury challenges and even go so far as to create a doubt about Georgia's concern for enforcing its so-called "rule" with anything approaching uniformity. In *Wilson v. State,* 69 Ga. 224 (1882), a motion to quash the indictment on the basis of discrimination in the grand jury was made at arraignment. The Georgia Supreme Court addressed the issue of discrimination without commenting upon the timeliness of the motion. The Georgia court also reached the merits of a challenge to the grand jury composition raised by means of a plea in abatement "prior to trial" without alluding to its timeliness in *Jones v. State,* 223 Ga. 157, 154 S.E.2d 228 (1967). The court's decision, adverse to the defendant, was reversed by the United States Supreme Court on the merits without any mention of timeliness. *Jones v. Georgia,* 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967). Again, in *Estes v. State,* 232 Ga. 703, 208 S.E.2d 806 (1974), one of the cases cited by the Georgia Supreme Court in its *Tennon* decision, the court first held that the jury challenge failed on its merits before citing the issue of timeliness as an alternate basis for its decision. In *Butler v. State,* 231 Ga. 276, 277, 201 S.E.2d 448, 449 (1973), the court decided the jury challenge on its merits, "[p]retermitting the question of the timeliness of the challenge." See also *Strauss v. Stynchcombe,* 224 Ga. 859, 165 S.E.2d 302 (1968), a state habeas corpus case in which

the court speaks of the petitioner's failure to challenge the grand jury "at time of trial," and then proceeds to decide the merits of the jury challenge.

In two cases in which Georgia prisoners had failed to object to the grand jury in the state court and then sought habeas corpus relief in this Court, we too expressed the procedural rule in differing terms. We spoke of the Georgia law as being "clear" that the challenge to the grand jury must occur "before trial," *Lumpkin v. Ricketts,* 551 F.2d 680, 682 (5th Cir. 1977), and as requiring challenges to be made at the "earliest available opportunity," *Dennis v. Hopper,* 548 F.2d 589 (5th Cir. 1977). The Supreme Court defined the rule as requiring a challenge "before indictment" in *Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955), without any mention of the exception for defendants who are ignorant of the illegality.

This lack of clarity in the precise formulation of the Georgia rule convinces me of the unfairness of holding Tennon to a waiver in this Court. It also presents an essential distinction from *Francis v. Henderson, supra,* and *Michel v. Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955), because in both of those cases the procedural requirements for challenging the grand jury were contained in a statute which left no doubt about its exact terms and about the consequences of noncompliance.

In a similar vein, the fact that the Georgia Supreme Court has on occasion seen fit to overlook the untimeliness of challenges to the grand jury and to address the constitutional issue on its merits is clear evidence that the state courts had *power* to consider the issue if they chose to exercise their *discretion* to do so.[5] This factor was the basis of the Supreme Court's decision in *Williams v. Georgia,* 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161 (1955), where a challenge to the petit jury panel was first made in an

---

5. The majority characterizes the Georgia rule as providing that "a challenge to the array of grand jurors *may not* be entertained by a trial court" unless it meets the time requirements. However, the Georgia cases cited above are

clear proof that this is a misstatement, for those cases reach the merits of motions which had been untimely filed. *See, e. g., Estes v. State,* 232 Ga. 703, 208 S.E.2d 806 (1974).

extraordinary motion for new trial filed after the defendant's conviction had been affirmed on appeal to the Georgia Supreme Court. Other motions for new trial on unrelated grounds had been made earlier and denied. Moreover, the precise objection raised in the defendant's extraordinary motion had been thoroughly explored by the Georgia court in an opinion rendered before the defendant's trial, thus weakening the defendant's assertion that he had not previously known of the illegality which he challenged. After the Georgia Supreme Court affirmed the denial of his motion, in a decision cited by the *Tennon* court, *Williams v. State,* 210 Ga. 665, 82 S.E.2d 217 (1954), the United States Supreme Court reversed. Acknowledging that a state procedural rule which bars the raising of a federal question may be a permissible exercise of state power, the Court nevertheless assumed jurisdiction of the appeal and remanded because an examination of Georgia case law had revealed that similar motions were granted as a matter of discretion. The Court stated:

> [W]e would have a different question from that before us if the trial court had no power to consider Williams' constitutional objection at the belated time he raised it. But, where a state allows questions of this sort to be raised at a late stage and be determined by its courts as a matter of discretion, we are not concluded from assuming jurisdiction and deciding whether the state court action in the particular circumstances is, in effect, an avoidance of the federal right. A state court may not, in the exercise of its discretion, decline to entertain a constitutional claim while passing upon kindred issues raised in the same manner.

349 U.S. at 383, 75 S.Ct. at 819 (footnote omitted).

If the *Williams* Court was unwilling to find a waiver under the circumstances of that case, where there had been no attempt to comply with the state procedural rule before trial, where other motions made after trial made no mention of the grand jury, and where an effective waiver in the state court would have constituted an adequate and independent state ground for the decision, thus depriving the Supreme Court of appellate jurisdiction, then certainly Tennon should not be held to have waived his federal claim for purposes of habeas corpus relief. "For even when state procedural grounds are adequate to bar direct review of a conviction in this Court, federal habeas corpus relief is nonetheless available to litigate the defendant's constitutional claims unless there has been a deliberate bypass of the state procedures. See *Fay v. Noia,* 372 U.S. 391, 428–431 [83 S.Ct. 822, 9 L.Ed.2d 837]." *Lefkowitz v. Newsome,* 420 U.S. 283, 290 n. 6, 95 S.Ct. 886, 890 n. 6, 43 L.Ed.2d 196 (1975). Georgia's lack of uniformity in demanding compliance with its "rule" casts doubts upon the status of the procedure as a rule and underscores the need for us to explore carefully whether there has been any waiver here at all. This is especially true in light of the Supreme Court's notation in *Francis* that different considerations would apply in cases where the state courts have declined to impose a waiver. 425 U.S. at 542 n. 5, 96 S.Ct. 1708. Certainly neither *Francis* nor *Michel* requires us to adhere blindly to the characterization of the Georgia Supreme Court in its *Tennon* decision when we find that decision contrary to federal and state law.

### III.

Even if we assume that the Georgia Supreme Court has correctly stated its procedural rule for challenges to the composition of the grand jury, Tennon cannot properly be said to have waived his right to challenge the grand jury. The Georgia rule, as enunciated by the Georgia court in Tennon's case, has two parts. The first part, expressing the general rule that the challenge must be made by motion before indictment, is wholly inapplicable to the facts of this case; the second part, providing an exception whereby a later motion may be made upon a showing of ignorance of the alleged illegality prior to indictment, has been met by Tennon.

The first portion of the rule appears to have originated in *Williams v. State,* 69 Ga.

11 (1882), where the Georgia Supreme Court refused to consider a challenge of bias in two grand jurors because the motion had been made after indictment. The court expressly noted that the defendant could have readily complied with the rule, and the syllabus to the opinion states that the defendant "had notice of the pending consideration of his case by the grand jury by reasons of having been previously placed under bond." *Id.* at 12. Numerous other cases in which this portion of the rule is applied present the rule as one intended for use in situations where the defendant has clearly been put upon notice, by means of an arrest prior to indictment or otherwise, that his case will be submitted to a grand jury. Many of the cases also specifically note that the defendant was represented by counsel before indictment. Thus, in *McHan v. State,* 232 Ga. 470, 207 S.E.2d 457 (1974), cited by the Georgia court in *Tennon,* a motion made after indictment was held properly overruled because the defendant had been arrested and had retained counsel before indictment. Even *Sanders v. State,* 235 Ga. 425, 219 S.E.2d 768 (1975), from which the Georgia court quoted in its *Tennon* decision, presented a defendant who had an attorney before his indictment. *See also Estes v. State,* 232 Ga. 703, 208 S.E.2d 806 (1974) (defendant confessed before indictment); *Miller v. State,* 224 Ga. 627, 163 S.E.2d 730 (1968) (defendant arrested and had attorney before indictment); *Blevins v. State,* 220 Ga. 720, 141 S.E.2d 426 (1965) (defendant had attorney before indictment); *Heard v. State,* 210 Ga. 523, 81 S.E.2d 467 (1954) (defendant arrested and had attorney before indictment); *Lumpkin v. State,* 152 Ga. 229, 109 S.E. 664 (1921) (defendant jailed before indictment); *Tucker v. State,* 135 Ga. 79, 68 S.E. 786 (1910) (defendant jailed before indictment).

In *Folds v. State,* 123 Ga. 167, 51 S.E. 305 (1905), it is not clear from the opinion whether the defendant had been arrested prior to indictment, but the court speaks of the necessity for making a preindictment

challenge unless the defendant lacks "full notice" of the probability that an indictment would be preferred against him. Likewise, in *Wooten v. State,* 224 Ga. 106, 109, 160 S.E.2d 403, 406 (1968), the court required a preindictment challenge to the grand jury from "[o]ne who knows that his activities will be investigated by the grand jury of a particular county, and who knows that such investigations may result in the grand jury returning an indictment charging him with the commission of a felony . . . . ."

These cases and others have convinced me that the first portion of the Georgia rule, requiring a challenge to the grand jury before indictment, is applicable only when the defendant has been arrested or otherwise actually alerted to the likelihood of grand jury activity. In absolutely no case which I have examined was the mere commission of a crime said to provide sufficient notice to the defendant. In fact, that notion is not even suggested in the cases.[6] The inapplicability of the preindictment rule to the facts of this case was the basis for a dissent to the Georgia court's decision in *Tennon.*

> Heretofore, this court has found that a defendant waived his right to challenge the composition of the grand jury when the defendant was arrested, and had counsel, prior to indictment. Here the doctrine of waiver is being extended to apply to a defendant who was arrested and had counsel after indictment. I would hold that the motion to quash the indictment was timely made.

235 Ga. at 598, 220 S.E.2d at 918 (Hill, J., dissenting).

In *Reece v. Georgia,* 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955), the Supreme Court held that a defendant who had been arrested and retained in jail without an attorney prior to his indictment had had no opportunity to comply with the Georgia procedural rule, which it interpreted as requiring chal-

---

**6.** Thus, the majority's statement that "it is inconceivable that Tennon could have been unaware that Georgia would be searching for him and might likely indict him" is, I believe, wholly irrelevant for purposes of the Georgia rule.

lenges to the grand jury to be made before indictment without exception. It is thus clear that the Supreme Court condemned the Georgia rule to the extent that it acted as an irrebuttable presumption that one who has been arrested and jailed for an offense is put on notice of the fact that his case will be presented to the grand jury, making it incumbent upon him to move to quash before indictment or suffer a waiver of his right. The Court decided, as indicated above, that Reece had no such opportunity, even though he was in jail, because counsel was not provided until after indictment. Thus, the *Reece* case strongly suggests that the assistance of counsel is a prerequisite to the application of the first portion of the rule.

Because Tennon was not arrested, jailed, provided with an attorney, or otherwise put on notice that he was about to be indicted by a grand jury, the first portion of the Georgia rule simply has no application to him. Rather, the second portion of the rule, if it is to be applied, must control the issue of Tennon's waiver. That portion of the rule permits a motion to be made after indictment upon a showing of ignorance of the alleged illegality in the grand jury composition. It seems to me by clearest implication that the district court which granted Tennon a writ of habeas corpus in this case made a fact finding that Tennon "had no knowledge, either actual or constructive, of such alleged illegal composition of the grand jury prior to the time the indictment was returned." 235 Ga. at 594, 220 S.E.2d at 916. The district court also found that Tennon had raised his objection as soon as practicable after his arrest.[7] Therefore, Tennon has complied with the Georgia rule as stated in the Georgia Supreme Court's decision of Tennon's appeal, and the district court properly reached the constitutional issue on its merits and found in Tennon's favor.

As for the question of Tennon's flight from the scene of an alleged homicide, I am aware of no Georgia case, and certainly the State has not called any to our attention, which holds that the second portion of the Georgia rule is unavailable to a fugitive. The rule and the cases are simply silent on the point, and the *Tennon* case did not rest upon this factor. Perhaps Georgia would prefer a rule which contained such an exception for fugitives. However, the federal court is certainly not the proper forum for pressing such an alteration of the rule. The rule with which we are here concerned flatly provides that one who shows that he was unaware of any illegality in the composition of the grand jury prior to his indictment may assert his objection at a later time. Tennon raised his objection well in advance of his arraignment and trial. In my opinion, he has waived nothing.

*Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955), do not alter my conclusion, for the Louisiana statute applicable to the waiver issue in those cases contained no exception from its clear requirement that challenges to the grand jury had to be made within a specified number of days following the expiration of the grand jury term or before trial, whichever was earlier. The petitioners in those cases were, in effect, asking the Supreme Court to engraft an exception upon a rule which clearly contained none. Here, however, we need not contrive an exception for Tennon; we must merely construe the Georgia rule as it is written.

At the very least, if the majority agrees with me that the only burden on Tennon before the habeas corpus court was to make the showing that he had no knowledge of the illegal composition of the grand jury prior to the time the indictment was returned and they are not satisfied with the findings of fact as to this issue, I am of the strong view that this Court should remand the case to the district court for further findings of fact.

---

7. This fact finding distinguishes Tennon's case from *Michel,* where the Supreme Court found that Poret had not asserted his federal claim at the "first opportunity," but that he had filed earlier motions "which implied a waiver of his objections to the grand jury." 350 U.S. at 100, 76 S.Ct. at 163.

I would affirm the judgment of the trial court or, in the alternative, I would remand for findings of fact with respect to the extent of Tennon's knowledge as to the illegality (already found by the district court) of the constitution of the grand jury.